IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:11-CV-356-D

| KANDY PITTA, | ) |  |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | **ORDER** |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | ) | |
| Defendant. | ) | |

Kandy Pitta ("plaintiff" or "Pitta") appeals the final decision of the Commissioner of Social Security ("Commissioner") denying her application for a period of disability and disability insurance benefits ("benefits"). Each party has filed a motion for judgment on the pleadings [D.E. 55, 60]. As explained below, the court grants the Commissioner's motion for judgment on the pleadings, denies plaintiff's motion, and affirms the Commissioner's final decision.

I.

Pitta applied for benefits on August 19, 2008, alleging a disability onset date of January 12, 2007, due to cervical spine injury, high blood pressure, pain management, anxiety, migraines, eczema, and acid reflux. Tr. at 135–42, 151. Her application was denied initially and upon reconsideration, and she timely filed a request for a hearing. Id. at 83–91. On February 3, 2010, an Administrative Law Judge ("ALJ") held a hearing regarding Pitta's application for benefits. Id. at 33–72.

On March 24, 2010, the ALJ denied Pitta's application. Id. at 20–28. On May 15, 2010, Pitta timely requested review. Id. at 15–16. On June 7, 2011, the Appeals Council denied the request for review. Id. at 8–11. However, on July 1, 2011, the Appeals Council set aside its denial

to consider additional information that Pitta submitted, but again denied the request for review. Id. at 1–4. On July 2, 2011, Pitta timely filed this action for judicial review. See 42 U.S.C. § 405(g).

The Social Security Act ("Act") defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995). The regulations under the Act ("Regulations") provide a five-step analysis that the ALJ must follow when determining whether a claimant is disabled. Essentially, this process requires the ALJ to consider whether a claimant (1) is engaged in substantial gainful employment; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) possesses the residual functional capacity ("RFC") to return to his past relevant work; and (5) if not, whether he can perform other work in light of his age, education, work experience, and RFC. See 20 C.F.R. § 404.1520(a)(4). The claimant bears the burden of proof at steps one through four, but the burden shifts to the Commissioner at step five. See, e.g., Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987); Pass, 65 F.3d at 1203.

Applying the five-step analysis of 20 C.F.R. § 404.1520(a)(4), the ALJ made the finding at step one that Pitta had not engaged in substantial gainful activity during the period from the alleged disability onset date of January 12, 2007, through the date last insured ("DLI") of March 31, 2008. Tr. at 22. At step two, the ALJ found that Pitta had the following medically determinable impairments which were severe within the meaning of 20 C.F.R. § 404.1520(c): lumbar and cervical degenerative disc disease, carpal tunnel syndrome with right carpal tunnel release, migraine headaches, and depression. Tr. at 22. At step three, however, the ALJ found that Pitta's impairments did not meet or medically equal any of the listings. Id.

2

The ALJ next determined that Pitta had the RFC to perform a range of light work with limitations.[1] Id. at 23–24. Specifically, the ALJ found that she could lift and carry twenty pounds occasionally and ten pounds frequently; could stand or walk and sit for up to six hours per eight-hour work day; should never climb ladders, ropes, or scaffolds and only occasionally climb ramps and stairs; should avoid workplace hazards and machinery; could perform frequent, but not constant, grasping and fine manipulation; and should perform only simple, unskilled tasks. Id. Based on this RFC, the ALJ found at step four that Pitta could not perform any past relevant work. Id. at 26. At step five, the ALJ found that there were a significant number of jobs in the national economy that Pitta could perform based on her age, education, previous work experience, and RFC, including the jobs of office helper, warehouse checker, and mail clerk. Id. Accordingly, the ALJ found Pitta not disabled during the relevant period. Id. at 27.

In reviewing the parties' cross-motions for judgment on the pleadings, the court "must uphold the factual findings of the [ALJ] if they are supported by substantial evidence and were reached through application of the correct legal standard." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996), superseded by regulation on other grounds, 20 C.F.R. § 416.927(d)(2); see 42 U.S.C. § 405(g). "Substantial evidence" is "more than a mere scintilla of evidence but may be somewhat less than a preponderance." Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966), abrogated by implication on other grounds by Black &Decker Disability Plan v. Nord, 538 U.S. 822 (2003). Under the

---

[1] The Regulations define light work as follows:

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.

20 C.F.R. § 404.1567(b).

3

substantial evidence standard, the court may not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [ALJ]." Craig, 76 F.3d at 589. Before the court can determine whether a decision is supported by substantial evidence, it must ascertain whether the ALJ has considered all relevant evidence and sufficiently explained the weight given to probative evidence. See, e.g., Sterling Smokeless Coal Co. v. Akers, 131 F.3d 438, 439–40 (4th Cir. 1997). "Judicial review of an administrative decision is impossible without an adequate explanation of that decision by the administrator." DeLoatche v. Heckler, 715 F.2d 148, 150 (4th Cir. 1983).

Pitta contends that the ALJ's decision should be reversed because: (1) the ALJ failed to consider certain evidence; (2) the ALJ failed to make proper findings regarding the credibility of witnesses; (3) the ALJ erred in finding that Pitta was capable of performing light work; and (4) the ALJ erred in finding that Pitta was capable of working a regular and continuous schedule. Pl.'s Mem. Supp. Mot. J. Pleadings [D.E. 56] 12–19.

Pitta first contends that the ALJ failed to consider significant evidence favorable to her, because he did not consider evidence subsequent to her DLI. Specifically, Pitta argues that the evidence demonstrates that her condition persisted and continued to deteriorate after her DLI and that consideration of all the medical evidence supports a finding that Pitta met listing 1.04A.[2] The

---

[2] Listing 1.04A provides as follows:

> 1.04 Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:
>
> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine)[.]

4

Commissioner responds that the ALJ addressed much of the evidence that Pitta cites. Furthermore, the Commissioner argues that the ALJ's failure to consider post-DLI evidence was harmless error because the evidence shows improvement and does not support Pitta's claim.

A claimant must establish that a disability existed before the expiration of the claimant's insured status. Johnson v. Barnhart, 434 F.3d 650, 655–56 (4th Cir. 2005). This principle does not, however, preclude an ALJ from considering medical records or opinions produced subsequent to the DLI. To the contrary, an ALJ may consider such medical records when they may be relevant to prove that a disability existed prior to the DLI. See Wooldridge v. Bowen, 816 F.2d 157, 160 (4th Cir. 1987) ("[M]edical evaluations made subsequent to the expiration of a claimant's insured status are not automatically barred from consideration and may be relevant to prove a previous disability."). Nonetheless, a remand is not necessary where the error was harmless. See, e.g., Abney v. Astrue, 5:07-394-KKC, 2008 WL 2074011, at *8 n.1 (E.D. Ky. May 13, 2008); Rankin v. Astrue, No. 5:07CV00087, 2008 WL 892686, at *4 (W.D. Va. Mar. 31, 2008). Here, any error in the ALJ's failure to discuss certain post-DLI medical evidence was harmless vis-a-vis listing 1.04A.

The ALJ expressly stated that Pitta did not meet listing 1.04A. Tr. at 23. The evidentiary basis for the ALJ's decision is evident from his evaluation of Pitta's RFC. Id. at 25; see Dixon v. Astrue, No. 5:09-CV-482-D, 2011 WL 812354, at *13 (E.D.N.C. Jan. 12, 2011), adopted by, 2011 WL 607120 (E.D.N.C. Feb. 10, 2011). The ALJ acknowledged Pitta's history of neck pain and that an MRI performed on January 9, 2007, revealed bulging at C5-6 with central spinal canal stenosis and mild cord deformity. Tr. at 25. The ALJ noted that Pitta complained of neck pain and stiffness, but that she denied muscle weakness or paresthesia, had normal muscle strength in her upper extremities, a normal gait, and no sensory deficits. Id. The ALJ further noted that Pitta had full

---

20 C.F.R. pt. 404, subpt. P, app. 1, § 1.04A.

5

upper extremity strength with no sensory deficits on January 23, 2007; neck pain, but only mild handgrip weakness, no sensory deficits, and a well-conserved cervical range on February 6, 2007; and no cervical spine tenderness, a supple neck, normal handgrip, a negative straight leg raise, and a normal gait on September 25, 2007. Id. The ALJ further observed that a series of epidural steroid injections in October 2007 produced dramatic improvement with an excellent range of motion in Pitta's neck and resolution of her left arm pain. Id. Finally, the ALJ noted that on February 25, 2008, Dr. Lacin performed a C5-6 and C6-7 anterior discectomy and arthrodesis, or fusion, that on March 10, 2008, Pitta had some residual neck pain and upper extremity discomfort, and that April 6, 2008, cervical x-rays revealed a satisfactory post-operative appearance. Id.

Although Pitta specifically contends that she had radiation of her neck pain into her upper extremities, limitation of range of motion, and muscle weakness with reflex loss that persisted post-DLI, the medical evidence does not support this contention. For example, even though Dr. Lacin's February 6, 2007 progress note indicated that Pitta was experiencing increasing left upper extremity weakness, Tr. at 275, Dr. Lacin's March 10, 2008 progress note indicated improvement, stating that she was "doing relatively well" post-surgery with "some residual neck pain and upper extremity discomfort" and that "this is something that is going to get better." Id. at 272. Even though physical therapy notes from July 22, 2008, indicated that Pitta was experiencing muscle spasms in her back, they also reflected that Pitta's surgery helped her neck and arm pain, that she had good range of motion in her neck, and that she had no complaints of extremity radiating symptoms. Id. at 300. Dr. Chazli's February 26, 2009 treatment note indicated that Pitta reported neck pain and weakness in her upper extremities, but examination revealed normal muscle power on the upper extremities and that her handgrip was "normal and strong." Id. at 421.

Likewise, physical therapy treatment notes from February 23, 2009, are consistent with

6

Pitta's complaints of neck and arm pain, but subsequent notes from March, April, and May indicated improvement in response to the physical therapy and that the frequency of her physical therapy visits had decreased. Id. at 442–48. On April 28, 2009, Dr. Long noted that Pitta was "doing well" and that Pitta reported her "physical functioning, mood, family relationships and social relationships are all doing quite well." Id. at 424. Dr. Long further noted that Pitta had a fair range of motion in her neck and good upper extremity strength and that, despite having residual neck and arm pain, she was doing well with physical therapy, cognitive behavioral therapy, and medication management. Id. Treatment notes from November 4, 2009, indicated that Pitta had only "mild upper extremity weakness, 4 out of 5 in the left upper extremity." Id. at 459.

In sum, Pitta has failed to carry her burden of demonstrating that her impairment meets or equals listing 1.04A. The record evidence does not support a finding that Pitta had "motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss." 20 C.F.R. pt. 404, subpt. P, app. 1 § 1.04A. Moreover, substantial evidence, both before and after Pitta's DLI, supports the ALJ's conclusion that she did not meet listing 1.04A. Accordingly, any error in the ALJ's failure to discuss all of the post-DLI evidence was harmless, and the court rejects Pitta's first challenge to the ALJ's decision.

Pitta next contends that the ALJ failed to make proper findings regarding the credibility of witnesses, specifically Jeffrey Pitta (her husband) and Natasha Jones (a friend). "An ALJ should and must consider lay corroboration, if any, of the claimant's subjective complaints." Baldwin v. Barnhart, 444 F. Supp. 2d 457, 465 (E.D.N.C. 2005) (quotation omitted), aff'd, 179 F. App'x 167 (4th Cir. 2006) (per curiam) (unpublished). "Great weight should be given to the [ALJ's] findings where credibility of witnesses is involved." Id. (quotation omitted). However, "the subjective testimony by lay witnesses may be discounted when there is contrary evidence within the record and

7

there is sufficient objective medical evidence that allows the fact finder to determine disability." Id.

Both witnesses testified at the administrative hearing as to how Pitta's physical limitations impacted her daily living. Tr. at 52–63. The ALJ acknowledged their testimony and stated that it "essentially confirmed the claimant's testimony." Id. at 24. The ALJ went on to explain how the medical evidence did not support Pitta's testimony regarding the intensity, persistence, and limiting effects of her symptoms. Id. The ALJ's decision makes clear that he evaluated Jeffrey Pitta's and Natasha Jones's testimony collectively along with Pitta's testimony and that, as a practical matter, he considered their testimony to be essentially consistent with Pitta's testimony. Therefore, the ALJ's analysis with respect to Pitta's testimony also applies to Jeffrey Pitta's and Natasha Jones's testimony.

The ALJ properly considered the testimony of these witnesses and concluded that it was not fully supported by the medical evidence. Accordingly, the court finds no error in the ALJ's credibility analysis with respect to the testimony of Jeffrey Pitta and Natasha Jones, and Pitta's second challenge to the ALJ's decision fails.

Pitta also contends that the ALJ erred in finding that she was capable of performing light work. More specifically, she contends that she cannot do the lifting, standing, or walking, and lacks the requisite bilateral manual dexterity, to perform even sedentary work. The ALJ found that Pitta could lift and carry twenty pounds occasionally and ten pounds frequently, could stand or walk and sit for up to six hours per eight-hour work day, should never climb ladders, ropes, or scaffolds and only occasionally climb ramps and stairs, should avoid workplace hazards and machinery, could perform frequent, but not constant, grasping and fine manipulation, and should perform only simple, unskilled tasks. Id. at 23–24. There is substantial evidence in the record to support the ALJ's RFC assessment.

8

In support of her contention that she cannot perform light work, Pitta first cites a functional capacity evaluation performed on May 11, 2010, over two years after her DLI and after the ALJ's decision. Although that testing indicated that Pitta could sit for only 19 minutes before having to stand and stand for only 18 minutes before having to sit to relieve pain and fatigue, the evaluator noted that "[o]verall test findings, in combination with clinical observations, suggest some minor inconsistency to the reliability/accuracy of Mrs. Pitta's subjective reports or pain/limitation" and that "Mrs. Pitta can do more at times than she currently states or perceives." Id. at 465. Pitta also cites a February 23, 2009 physical therapy treatment note that indicated the pain in her neck and arms was exacerbated by looking up and down and reaching overhead or performing repetitive movements with her arms. Id. at 448. However, treatment notes from later physical therapy sessions indicated decreased pain in her neck and resolution of arm pain when reaching overhead, and the frequency of her physical therapy visits had decreased. Id. at 442–48. Furthermore, the ALJ's findings with respect to Pitta's RFC are fully supported by the RFC assessment of Dr. Haywood, a nonexamining state agency medical consultant. Id. at 349–56. The ALJ found Dr. Haywood's consultative assessment to be essentially consistent with the objective medical evidence and afforded it great weight. Id. at 25–26.

With respect to Pitta's assertion that she lacked the bilateral manual dexterity to perform light work, the ALJ noted that Pitta underwent right carpel tunnel release and that there was evidence of carpel tunnel on the left, which he accounted for with the limitation of "frequent, but not constant, grasping and fine manipulation," id. at 24, consistent with Dr. Haywood's consultative assessment. See id. at 352. The ALJ cited medical evidence in the record that supported this finding. Id. at 25; see id. at 421. Pitta's treating physicians also indicated no limitations generally or specifically with respect to her handling and fingering abilities, which the ALJ noted at the administrative hearing.

9

Id. at 68. Finally, the ALJ's hypothetical to the vocational expert at the administrative hearing included a limitation of only frequent grasping, to which the vocational expert responded that there were positions available for an individual so limited. Id. at 67.

Although Pitta cites her own testimony regarding her limitations, the ALJ found that the medical evidence did not support her testimony regarding the intensity, persistence, and limiting effects of Pitta's symptoms. Id. at 24–25. Pitta does not expressly challenge the ALJ's credibility assessment as to her own testimony. However, to the extent such a challenge is implicit in her objection to the ALJ's RFC assessment, the ALJ's credibility assessment comports with legal standards and is supported by substantial evidence.

The ALJ must determine whether a claimant's medically documented impairments could cause the claimant's alleged symptoms. Craig, 76 F.3d at 594–95. Next, the ALJ must evaluate the claimant's statements concerning those symptoms. Id. at 595. Here, the ALJ followed the two-step process in evaluating Pitta's credibility. Tr. at 24. The ALJ first noted that Pitta testified at the administrative hearing to having neck, back, and arm pain, difficulty gripping, grasping, and typing, and an inability to sit for more than 15 minutes, stand for more than 15 to 20 minutes, walk more than a half block, and lift more than ten pounds at a time. Id. The ALJ then explained that although Pitta's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms, her statements concerning the intensity, persistence, and limiting effects of those symptoms were not credible to the extent inconsistent with the RFC assessment. Id. In addition to the inconsistency between Pitta's testimony and the RFC assessment, the ALJ noted Pitta's testimony at the administrative hearing that her right arm tingling and numbness had improved after surgery and that she dusts, washes dishes, and gets her daughter ready for school. Id. The ALJ went on to thoroughly discuss the medical records underlying his findings. Id. at 24–26. The ALJ did

give some weight to Pitta's complaints and, accordingly, concluded that the severity of her condition warranted a limitation to light work with restrictions, rather than work at a higher exertional level. Id. at 23–24. Accordingly, the ALJ properly assessed Pitta's credibility and gave due consideration to her testimony in the RFC assessment.

In sum, the ALJ's RFC determination was reached in accordance with applicable legal standards and is supported by substantial evidence. Thus, Pitta's third challenge to the ALJ's decision fails.

Finally, Pitta contends that the ALJ erred in finding that she was capable of working a regular and continuous schedule, citing her chronic pain and inability to do any physical activity for even short periods of time. The ALJ appropriately found that Pitta was capable of performing light work with limitations, which would necessarily include working a regular and continuous schedule. See, e.g., Hines v. Barnhart, 453 F.3d 559, 562–63 (4th Cir. 2006). Having found no error in the ALJ's RFC assessment, the court rejects this challenge on the same grounds.

II.

The ALJ applied the proper legal standards and substantial evidence supports the decision. Accordingly, the Commissioner's motion for judgment on the pleadings [D.E. 60] is GRANTED, plaintiff's motion for judgment on the pleadings [D.E. 55] is DENIED, and the final decision of the Commissioner is AFFIRMED. The clerk shall close the case.

SO ORDERED. This 14 day of August 2012.

JAMES C. DEVER III
Chief United States District Judge